IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUAN CARRERO-VASQUEZ, #358107<br>Plaintiff,<br>v.<br><br>CO II LINN<br>CO II SCHIEBEL<br>DUTY SARGENT 4 P.M.- 12 MIDNIGHT<br>  ON MAY 26, 2012<br>12 MIDNIGHT -8 A.M. SHIFT DUTY<br>  SARGENT ON JUNE 2, 2012<br>8 A.M. - 4 P.M. SHIFT OFFICERS<br>CO II MILLER 4 P.M. – 12 SHIFT<br>LT. LIKIN 7 A.M. – 3 SHIFT<br>CO II ORTT<br>CO II LAMBERT<br>SARGENT ISER<br>SGT ON DUTY SEPTEMBER 23, 2012<br>SGT. GILLUM<br>LT. SMITH/HOUSING UNIT MANAGER<br>  7 A.M. – 3 SHIFT<br>CO II TURNER 11 P.M. -7 A.M. SHIFT<br>ARP COORDINATOR<br>NURSE ON DUTY JANUARY 14, 2013<br>  11 P.M. SHIFT IN HU 1<br>G. ABRAHAM CCMS III<br>KARLA HILL-PEAY CCMS II<br>P SMITH (ARP) UNIT<br>RANDY WATSON/ASSISTANT<br>  COMMISSIONER<br>ROBIN WOOLFORD/DEPUTY DIRECTOR<br>Defendants. | CIVIL ACTION NO. RDB-13-552 |

## MEMORANDUM OPINION

Pending is self-represented Plaintiff Juan Carrero-Vasquez's ("Plaintiff") Complaint filed pursuant to 42 U.S.C. § 1983. (ECF No. 1). Defendants,[1] by their counsel, have filed a Motion

---

[1] Unnamed Defendants "Duty Sergeant," "Shift Duty Sergeant" and "Nurse on Duty 1/14/13" were not served. It is apparent that Plaintiff's claims against them are unavailing for the reasons

to Dismiss or, in the Alternative, for Summary Judgment with declarations and verified exhibits. (ECF No. 26). Plaintiff has filed Opposition responses. (ECF Nos. 33-35). No hearing is needed to resolve the issues presented. *See* Local Rule 106.5 (D. Md. 2011). For reasons to follow, the claims against Defendants "Duty Sergeant," "Sheft Duty Sergeant" and "Nurse on Duty 1/14/13" ARE DISMISSED WITHOUT PREJUDICE and Defendants Linn, Schiebel, Miller, Linkin, Ortt. Lambert, Iser, Gillum, Smith, Turner, "ARP Coordinator," Abraham, Hill-Peay, Smith, Watson, and Woolford's dispositive Motion, treated as one for summary judgment, IS GRANTED.

## BACKGROUND

In this Complaint, Plaintiff, an inmate formerly housed at the Western Correctional Institution ("WCI") and North Branch Correctional Institution ("NBCI") in Cumberland, Maryland,[2] claims that Defendants disregarded his administrative remedy procedure ("ARP") grievances regarding the conditions of his cell, destruction of clothes, access to courts, and medical diet while he was housed at WCI in 2012. (ECF No. 1 at pgs. 5-6). Plaintiff asserts that he filed supplemental remedies while housed at NBCI from June of 2012 to January of 2013, which were either dismissed or ignored. (*Id.* at pgs. 7-8). He complains that in May of 2012, his right to be housed safely was violated when an inmate with a known assaultive behavior and mental health issues was intentionally moved into his WCI cell and he was assaulted six days later. (*Id.* at p. 9). He claims he was denied immediate medical treatment for the cuts to his shoulder he experienced from the inmate assault. He further asserts that he was then moved into

---

discussed herein. The claim against Defendants "Duty Sargeant," "Sheft Duty Sargeant" and "Nurse on Duty 1/14/13" will simply be dismissed.

[2] Plaintiff is now detained at the Montgomery County Correctional Facility where he is awaiting re-trial on his criminal charges.

a "contingency " cell which was without a bunk or mattress and was cold, dirty and had "feces in the fixtures." Plaintiff further complains that he continued to be housed in the contingency cell and was punitively provided bagged dinner meals on the floor of his cell, denied toilet paper which caused him to develop "flammable" rashes, and had his medication used as "punishment." He contends that he did not see the medical department until June 3, 2012. (ECF No. 1 at pgs. 10-11).

Plaintiff claims that he was transferred to NBCI even though he was classified as a medium security inmate. He alleges that NBCI correctional officers harassed him and tried to force him to be celled with inmates who did not want to be celled with him and that an officer threatened him with a cell extraction and the use of a chemical agent in response to his refusal to be handcuffed. Plaintiff also claims that officers interfered with his medical treatment. (*Id.* at pgs. 12-14).

Next, Plaintiff complains that on January 14, 2013, he was assaulted by another NBCI inmate and was denied medical care when a nurse failed to stitch the open wound on his forehead, and instead used an adhesive and bandage on the site. He asserts that he was not provided ice for swelling, pain medication, or follow-up care for dressing changes. (*Id.* at p. 14). Plaintiff also states that he was falsely cited with an infraction by an NBCI correctional officer, but was absolved of the infraction by a hearing officer. Finally, Plaintiff alleges that NBCI mail is being tampered with and makes a generalized constitutional claim that prison officials are threatening his health and subjecting him to a substantial risk of serious harm. As redress, he seeks injunctive relief and compensatory and punitive damages, and prays a jury trial. (*Id.* at pgs. 15-16).

## STANDARD OF REVIEW

I.  **Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such

4

deference. Id. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### 2. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## ANALYSIS

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "' is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**Plaintiff's Allegations**

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and liberally construes Plaintiff's pleadings in light of the fact that he is self-represented. *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978). Plaintiff has raised a

number of claims within the body of his Complaint. The allegations shall be addressed *in seriatim*

### A. Administrative Remedies

Plaintiff seemingly complains that a number of the Defendants failed to properly review and decide his Administrative Remedy Procedure ("ARP") grievances while he was confined at both WCI and NBCI. In response, Defendants maintain that while housed at the two prisons, Plaintiff filed a total of 25 ARPs, all of which they claim were investigated and replied to by prison staff. (ECF No. 26, Ex. A at Durst Decl.). Defendants deny interfering with Plaintiff's ARPs. (*Id.*, Ex. F at Smith Decl.).

Whether or not Plaintiff's ARPs have been processed or investigated properly or have been wrongfully dismissed, under the law in this Circuit, the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by a state. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, Plaintiff's issue with the manner in which his grievances were handled and with the decision-making process associated with his ARPs simply does not implicate a constitutional claim.[3]

### B. Failure to Protect

Plaintiff claims correctional officers purposefully placed another WCI inmate into his cell, knowing the inmate (James Foster) to be mentally ill and assaultive. Defendants Codey Linn and Sean Schiebel affirm that the allegation is false as they do not make cell assignment decisions, were not aware of any history of assaults or mental illness on the part of inmate

---

[3] It is arguable that if certain acts or omissions relating to the processing of inmate grievances interfere with an inmate's constitutional right to access the courts, a colorable claim may be stated. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Plaintiff has failed to show that Defendants' alleged mishandling of his ARPs impeded his access to the courts.

7

Foster, and have no recollection of Plaintiff asking them to switch cells in May or June of 2012. (ECF No. 26, Ex. C at Linn Decl.; Ex. D at Schiebel Decl.). Defendants Iser and Ortt, however, recall an incident in August of 2012 where Plaintiff refused to permit an inmate named LaRosa to be moved into his cell because he did not want to be double-celled (*Id.*, Ex. G at Iser Decl.; Ex. I at Ortt Decl.). Plaintiff eventually permitted LaRosa to enter his cell after discussions with Sergeant Isler. No incidents were reported from the cell assignment.

To the extent that Plaintiff claims that while housed at NBCI he was assaulted by cell mate Roderick Johnson, acting "under contract," at the behest of correctional officers who provided Johnson with special privileges, this is generally denied by Defendants, who claim they have no knowledge of an altercation between Plaintiff and Johnson or special privileges being provided to Johnson. (*Id.*, Ex. G at Iser Decl.; Ex. H at Gillum Decl.).

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id.* As with the

8

subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the inmate must show a serious physical injury. *See De'Lonta v. Angelone,* 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White,* 102 F.3d 267, 272-73 (7th Cir. 1996). A showing of mere negligence does not suffice to establish deliberate indifference. *See Farmer,* 511 U.S. at 834 (stating that to satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety); *see also Daniels v. Williams,* 474 U.S. 327, 332–34 (1986).

Plaintiff has been called upon to rebut Defendants' declarations and materials with his own verified documents to establish a genuine dispute of material fact. He has failed to so do. Only Plaintiff's supposition has been articulated in support of his claims that inmates Foster and Johnson were purposely placed in his cell to injure him. The inmates were not on Plaintiff's enemies list prior to the assignments. Deliberate indifference has not been established.

### C. Conditions of Confinement

Plaintiff complains that he was placed in a WCI contingency cell that was dirty and had no mattress He additionally claims that officers impeded his ability to obtain medication. Defendants state that Plaintiff was housed in a Special Confinement Unit ("SCU") cell, while on WCI segregation, and was placed in a contingency cell, also called a "behavior modification cell," on staff alert. Medications are distributed to such inmates by a medical unit nurse and officers are not permitted to touch an inmate's medication. The officer is responsible for the safety of the nurse and inmate and to ensure this the inmate is instructed to go to the back of the

9

cell, away from the cell door, and to kneel. After this occurs, the feed-up slot is unlocked and the nurse places the medications on the feed-up slot. Once the slot is shut again, the inmate can come to the door and get the medication. (ECF No. 26, Ex. B, Linkin Decl.; Ex. E, Miller Decl.). Inmates in the behavior modification cells are permitted to wear underwear, a tee shirt, and socks. Shoes are not permitted, because shoe strings can be used by inmates to harm themselves. The cell has a toilet and sink, but no bunk. Inmates in the cell are not given a roll of toilet paper, but are provided toilet paper upon request as needed. Defendants acknowledge that the conditions are restrictive so as to induce cooperation on the part of the inmate. (*Id.*).

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Plaintiff complains about the conditions of his behavior modification cell at WCI. According to the records, he was assigned to the cell for 33 hours. He has failed to come forward with evidence that basic human needs were not met or that he suffered an actual injury from the assignment in the cell on SCU.

### D. Medical Care

Plaintiff claims that he did not receive proper treatment for cuts to his shoulder sustained when he was assaulted at WCI and for lacerations to his forehead and for a rash he suffered while housed at NBCI. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to

deliberate indifference to a serious medical need.[4] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter...becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Correctional Ctr.*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)).

---

[4] The medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005).

11

Plaintiff has failed to demonstrate that his cuts and rash comprise serious medical conditions. Moreover, he has failed to come forward with sufficient evidence to support his claim that the State Defendants knowingly interfered with or estopped him from receiving care. He has failed to demonstrate an Eighth Amendment violation.

### E.     Officer Harassment

Plaintiff alleges that various officers threatened and harassed him on unspecified dates and times. When a defendant makes comments that may constitute verbal abuse or harassment, those comments alone do not rise to the level of an Eighth Amendment violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in, *Moody v. Grove*, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim); *Morrison v. Martin*, 755 F.Supp. 683, 687 (E.D.N.C.1990) (same). Plaintiff's allegations that correctional officers harassed and threatened him on separate occasions are not enough to state a § 1983 claim. Such a claim only accrues when the threats or threatening conduct result in a constitutional deprivation. *See Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983).

### F. Miscellaneous Claims

Plaintiff additionally complaints that he was cited with a false infraction. This allegation does not state a due process claim. In *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), the Second Circuit concluded that with regard to alleged falsified evidence, due process is satisfied where an inmate is afforded the opportunity to confront and challenge the alleged perjured testimony offered in the reports. *Id.* at 953. Plaintiff received a hearing before a hearing officer and was found not guilty of the charge. No Fourteenth Amendment violation is demonstrated.

12

He further contends, in general terms, that he experienced mail tampering at NBCI. This allegation, in and of itself, fails to set out a colorable constitutional claim. An inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). Plaintiff has failed to show how he experienced harm from the alleged mail tampering.

## CONCLUSION

Even when viewed the evidence in the light most favorable to him and all justifiable inferences are drawn in his favor, Plaintiff's claims are factually unsupported and no genuine issue of material fact is presented. Accordingly, Defendants Watson, Woolford, Likin, Linn, Schiebel, Miller, Dale Smith, Iser, Gillum, Zais, Ortt, Turner, Lambert, Abraham, Hill-Peay, and Patricia Smith's Motion for Summary Judgment will be granted. Judgment will be entered in favor of these Defendants. The Complaint against Defendants "Duty Sergeant," "Shift Duty Sergeant" and "Nurse on Duty 1/14/13" IS DISMISSED. A separate Order follows.

Date: January, 10, 2014

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE